1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

11
12
13
14
15
16

CHINHANG SHIH,

       Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

       Defendant.

Case No. 12-cv-03850 NC

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 17

17
18
19
20
21
22
23

     Plaintiff Chinhang Shih seeks judicial review of the Commissioner of Social Security's final decision finding her ineligible for Supplemental Security Income ("SSI") benefits due to excess resources. Both parties move for summary judgment; plaintiff moves in the alternative for remand for further administrative proceedings. The issues are (1) whether substantial evidence supports the ALJ's finding that Shih did not rebut the presumption of ownership of a joint account, and (2) whether remand for evaluation of new evidence is appropriate.

24
25
26
27

     Because both parties have consented to proceed before a magistrate judge, this Court has jurisdiction under 28 U.S.C. § 636(c). Dkt. Nos. 6, 7. For the reasons set forth below, this Court GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for summary judgment.

28
//

# I. BACKGROUND

## A.    Agency Review

On December 4, 2008, Shih filed an application for SSI, and was granted benefits, with payments beginning in January 2009.  A.R. 12, 16-21.  In June 2009, the Social Security Administration ("SSA") learned of a joint bank account opened under Shih's former name, Mei Ling Lam, and the name of her brother, Man Chung Lam.  A.R. 12.  The balance in the joint account exceeded the $2,000 SSI limit.  A.R. 12.  As a result, on July 24, 2009, the SSA notified Shih that her benefits were suspended effective September 2009.  A.R. 22.  On August 17, 2009, the SSA assessed an overpayment of $7,500 against Shih.  A.R. 37.  On October 6, 2009, Shih requested reconsideration, and "disputed the fact and amount of overpayment."  A.R. 45.  Shih failed to appear for a scheduled informal telephone conference and the SSA affirmed its initial decision.  A.R. 47.

## B.    Administrative Review

On February 4, 2010, Shih requested a hearing before an Administrative Law Judge ("ALJ").  A.R. 60.  On September 2, 2010 at a hearing before ALJ Michael J. Kopicki, Shih, with the help of an interpreter, appeared with counsel Donald Medearis, and testified regarding the ownership of the joint account.  A.R. 95, 101-04.

### 1.    Shih's Testimony and Additional Evidence

Shih testified that she is a Buddhist monk with no source of income.  A.R. 99, 100.  She is supported by friends and other Buddhists followers, who give her food and cash to pay her monthly rent of $408.  A.R. 99-100.  Shih has a checking account, with approximately two to three hundred dollars in it.  A.R. 99-100.  She testified that before she became a Buddhist, her name was Mei Ling Lam.  A.R. 100.  Shih denied knowledge of sharing a joint bank account with her brother Man Chung Lam.  A.R. 100.  She testified that she only learned of the account when the SSA mailed a letter to her.  A.R. 101.  She further testified that after the closure of the joint account in February 2010, she never received any of the money and does not know what happened to the money.  A.R. 102-03.

In support of her claims, Shih also submitted into evidence certain documents

allegedly corroborating her testimony.  These included: (1) a summary, signed by Shih's sister, Miu Ling Lam, of a conversation between Medearis and Miu, (2) a letter from Danny Chin of GBC International Bank, and (3) a letter from Shih's brother, Man Chung Lam.

The summary of the conversation with Miu Ling Lam asserted that over twenty years ago, Miu opened an account jointly in Shih's former name and in the name of Shih's brother, Man, at Sincere Savings Bank (which later changed its name to GBC International Bank).  A.R. 89.  According to the summary, Miu stated the reason for opening the account was that she was going to be out of the country, and wanted her sister and brother to be able to send her money.  A.R. 89.  Miu, however, never told Shih or Man about the account.  A.R. 89.  The summary also explains that Miu opened the account because she wanted the gift the bank provided new account holders.  A.R. 89.  The letter submitted by Man stated that Miu opened the account for the purposes of estate distribution, because she often gets sick.  A.R. 67.  Man also maintained that Shih and he did not have any knowledge of the account.  A.R. 67.  When asked about why Miu opened the account, Shih stated that she did not know, but recalled telling Miu her social security number a long time ago.  A.R. 102.  When asked about her brother's letter, stating that the account was opened for Miu's estate distribution, Shih testified that she does not know anything about her sister's illness.  A.R. 102.

Shih also submitted a letter from GBC International Bank, where the account was created.  Danny Chin, Assistant Vice President and Customer Service Manager of the bank, responding to a request from Shih to remove her name from the account, stated that the account "was opened in good faith of the awareness of both account holders."  A.R. 63. GBC International Bank reports that since the account opening, to July 2009, the account was reported under Shih's former name, Mei Ling Lam, and under her social security number, with interest income statements sent to her each year.  A.R. 63.  The letter also reported that on August 26, 2008, GBC International Bank received a signed letter from Mei Ling Lam requesting to reactivate the account.  A.R. 63.  Shih testified that the letter

1  from GBC International Bank discussing the removal of her name from the account was

2  sent to Miu's address. A.R. 103. Shih learned of the letter after Miu gave it to her. A.R.

3  103. It is unclear why the letter was sent to Miu's address. Shih also testified that she

4  lived with her sister, and used her address as her mailing address as recently as 2007. A.R.

5  104.

6         **2.**      **The ALJ's Findings**

7        On October 28, 2010, the ALJ issued his decision, finding that Shih was not eligible

8  for SSI benefits under sections 1602 and 1611 of the Social Security Act and that she was

9  overpaid $7,500 for January through August 2009. A.R. 14. The ALJ found that, despite

10  her assertions to the contrary, Shih was aware of the joint account at the time she applied

11  for SSI, as evidenced by the letter from GBC International Bank, which stated that in

12  August 2008, four months before she applied for SSI, Shih asked to reactivate the dormant

13  account. A.R. 13. Further, he found that the statements regarding ownership and purpose

14  of opening the account did not "ring true." A.R. 13. Specifically, the ALJ found that the

15  statements by Man, who asserted that the account was opened for estate distribution

16  because Shih's sister was sickly, and Miu, who asserted that the account was opened so

17  that Shih and her brother can send her money while she traveled, were inconsistent. A.R.

18  13. Because of these reasons, the ALJ found that Shih did not rebut the presumption of

19  ownership of the joint account. A.R. 13. As such, the funds were considered Shih's until

20  the closing of the account, and, as a result, Shih's resources exceeded the $2,000 limit

21  through February 2010. A.R. 13-14.

22         **3.**      **The Appeals Council's Denial of Review**

23        Shih requested reconsideration of the ALJ's decision from the Appeals Council on

24  November 5, 2010, arguing that the ALJ's decision "was not supported by substantial

25  evidence" and "[was] based on legal error." A.R. 8. Shih also requested more time to

26  submit legal briefing and more evidence. A.R. 8. The Appeals Council found no reason to

27  review the ALJ's decision, and denied Shih's request for review. A.R. 2.

28  //

Case No. 12-cv-3850 NC
ORDER TO GRANT DEFENDANT'S        4
MSJ AND DENY PLAINTIFF'S MSJ

## II. STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). The decision of the Commissioner should "only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted). It is evidence that a reasonable mind would accept as adequate to support the conclusion. *Id.* A reviewing court must consider the entire record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks and citation omitted). A decision of the ALJ will not be reversed for errors that are harmless. *Burch*, 400 F.3d at 679.

In addition, credibility assessments are often necessary in hearings before an ALJ. *Hudson v. Bowen*, 849 F.2d 433, 434 (9th Cir. 1988). If an ALJ's decision is based on a credibility assessment, "there must be an explicit finding as to whether the testimony was believed or disbelieved and the testimony must not be entirely discounted because there was a lack of objective finding." *Id.* at 434-35 (citations omitted). An ALJ's credibility assessment must be given great weight. *Id.* at 434.

## III. DISCUSSION

Supplemental security is a needs-based program, and thus, a claimant must establish a financial need to qualify. 42 U.S.C. § 1382. In order to be eligible for benefits, claimants must not have resources greater than a certain limit. *Id.* at § 1382(a)(1). Money in a financial account is considered a claimant's resources if the claimant owns the account, and can use the funds for his or her support and maintenance. 20 C.F.R. § 416.1208(a).

Ownership of the account is determined by looking at how the individual holds the account, which is reflected by how the account is titled. *Id.* If the account is jointly held by one or more SSI claimants, the claimant is presumed to own all the funds in the account. *Id.* at § 416.1208(c). This presumption is successfully rebutted if the claimant furnishes evidence and establishes that some or all of the funds in the account do not belong to him or her. *Id.* at § 416.1208(c)(3). Specifically, to rebut the presumption, the claimant must:

> (1)   submit his/her statement along with corroborating statements from other account holders, regarding who owns the funds in the joint account, why there is a joint account, who has made deposits to and withdrawals from the account, and how the withdrawals have been spent;

> (2)   submit account records showing deposits, withdrawals, and interest (if any) in the months for which ownership of funds is at issue; and

> (3)   correct the account title to show that the claimant is no longer a co-owner if the individual owns none of the funds; or, if the claimant only owns a portion of the funds, separate the funds owned by the other account holder(s) from his/her own funds and correct the account title to show that the funds are solely-owned by the claimant.

*Id.* at § 416.1208(c)(4).

Here, the ALJ did not discuss Shih's record submissions, but it appears that she did submit statements showing account activities from March 2007 to March 2009. A.R. 50-53. The document indicates deposits and paid interest, but there is no indication that withdrawals were made. The ALJ did find that Shih corrected the account title to show that only Shih's brother, Man Chung Lam, solely owns the account. A.R. 13. The ALJ, however, found that Shih did not rebut the presumption of ownership because she failed to meet the first prong. A.R. 14. Specifically, the ALJ found that Shih did not submit sufficient statements regarding who owned the account and the reason for the joint account. A.R. 13.

Shih argues that the ALJ's decision is not supported by substantial evidence and should be reversed because (1) the letter from the bank showing that Mei Ling Lam asked to reactivate the joint account in August 2008 does not sufficiently discredit Shih's testimony that she did not know about the account, and (2) the ALJ improperly found

1   Shih's testimony not credible on the basis that her brother and sister's statements about the

2   account were inconsistent   Dkt. No. 16 at 4-8.  The Court disagrees with Shih's arguments.

3   **A.    The ALJ Properly Applied the Requirements for Rebuttal of Joint Ownership.**

4          As an initial matter, Shih argues that the ALJ misapplied the joint account ownership

5   regulation and thus committed legal error by "concluding that Ms. Shih failed to rebut

6   ownership of the account, where not having opened the account, she could not possibly

7   explain why there was a joint account." Dkt. No. 16 at 4-5.  This argument fails because it

8   has no legal or factual basis.  First, Shih provides no legal support for her contention that

9   the first prong of the rebuttal standard somehow does not apply if the claimant contends she

10  has no knowledge of the account.  Second, Shih's argument that the ALJ applied "an

11  impossible standard" misconstrues the ALJ's decision.  The ALJ did not hold that Shih

12  failed to rebut the presumption simply because she did not provide "the one reason" for the

13  joint account.  *See* Dkt. No. 18 at 1.  Rather, the ALJ's decision was based on the findings

14  that Shih did know about the account, and that the statements she submitted regarding

15  account ownership and the reason for the joint account did not ring true.  A.R. 13.  As

16  discussed below, these findings are supported by substantial evidence.

17  **B.    The ALJ's Finding That Shih Was Aware of the Account Is Supported by**
        **Substantial Evidence.**

18

19         Shih further asserts that she did not know of the account until the SSA told her in

20  2009, and thus, there is no way she could have owned funds in the account. Dkt. No. 16 at

21  5-6.  In his decision, the ALJ disbelieved Shih's testimony and arguments that she did not

22  know about the account, pointing that there was objective evidence that Shih asked to

23  reactivate the dormant account four months before she applied for SSI, and that Shih's

24  family inconsistently described the reasons for the existence of the account.  A.R. 13.  Shih

25  essentially argues that the GBC International Bank letter, which states that Mei Ling Lam

26  asked to reactivate the joint account in August 2008, is not substantial evidence.  Dkt. No.

27  16 at 6-7.  Specifically, Shih argues that because "[a]t no time did the Bank assert that it

28  was in fact Ms. Shih who reactivated the account," the Bank's letter merely shows that

1   "someone using the name 'Mei Ling Lam' opened and activated the account" and thus it is

2   not "dispositive proof."  Dkt. Nos. 16 at 7; 18 at 3.  While Shih speculates as to the facts of

3   the case, it is not within the province of this Court to reevaluate facts.  *Ryan*, 528 F.3d at

4   1198.  There is no objective evidence or any other testimony in the record showing that

5   someone other than Shih requested the reactivation of the account or why the account was

6   reactivated.  "Where evidence is susceptible to more than one rational interpretation, the

7   ALJ's decisions should be upheld."  *Id*.

8       Because Shih does not provide any objective evidence to verify her assertions, and

9   only provides her own testimony, and Miu's and Man's inconsistent statements, the ALJ

10  was entitled to disregard her self-serving statements.  *See Hudson*, 849 F.2d at 434 ("In

11  determining whether a claimant has spent or retained excess resources, an ALJ is free to

12  disregard self-serving statements that cannot be verified."); *see also Nyman v. Heckler*, 779

13  F.2d 528, 531 (9th Cir. 1985) ("[A] claimant's self-serving statements may be disregarded

14  to the extent they are unsupported by objective findings.").  While Shih also argues that the

15  lack of substantial withdrawals is consistent with her claim she did not know about the

16  account, that evidence is also susceptible to multiple explanations.  *See* Dkt. No. 16 at 7.

17  Shih might not have needed to make withdrawals due to her receipt of SSI benefits, and

18  could have refrained from making withdrawals in the hope of getting her benefits reinstated

19  after they were revoked.  This Court is not in a position to resolve such conflicts in the

20  evidence.  Instead of relying on Shih's self-serving or speculative statements, the ALJ cited

21  to evidence in the record that Shih was aware of the account, specifically, the January 29,

22  2010 letter from GBC International Bank, which states that on August 26, 2008, Mei Ling

23  Lam requested to reactivate the bank account.  A.R. 13, 63.  The letter also states that "this

24  account was opened in good faith of the awareness of both account holders.  Initially and

25  until July 2009, the account was reported under your [Mei Ling Lam's] social security

26  number, with interest income statements sent each year."  A.R. 63.  Accordingly, the ALJ's

27  finding that Shih was aware of the account is supported by substantial evidence in the

28  record.

Case No. 12-cv-3850 NC
ORDER TO GRANT DEFENDANT'S           8
MSJ AND DENY PLAINTIFF'S MSJ

## C.   The ALJ Properly Discounted the Statements from Shih's Brother and Sister Regarding the Ownership of the Account and Why It Was Opened.

Shih asserts that the ALJ "erred in finding that Ms. Shih lacked credibility because her brother and her sister had differing explanations of the purpose of the joint account." Dkt. No. 16 at 7-8.  Those differing explanations, Shih argues, are irrelevant to her credibility because she only testified that she was unaware of the account, and did not speculate as to why the account was opened.  Dkt. No. 16 at 8.  However, as addressed above, the ALJ's finding that Shih was aware of the account is supported by substantial evidence.  Moreover, the ALJ properly evaluated the lay testimony provided by Man and Miu.

Lay testimony is evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ is not required to discuss every witness's testimony on an individualized basis.  *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by another witness.  *Id.*  While these rules are generally applied when evaluating lay testimony for a claimant's excess pain claim, use of these credibility rules to evaluate testimony in an excess funds context is not unprecedented.  *See, e.g., Hudson,* 849 F.2d 443 (applying rules governing credibility in the pain context from *Cotton, Lewin*, and *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) to the excess funds context).

The ALJ here specifically stated that the reasons provided by Shih's family for the existence of the account were inconsistent.  A.R. 13.  In his decision, the ALJ referred to the letter from Shih's brother and conversation with Shih's sister.  The ALJ pointed out that, in his letter, Man explained that the purpose for opening the account was for estate distribution, because Shih's sister was sickly at the time, A.R. 13 (citing A.R. 67), and that Miu explained that she opened the account because she planned to travel and wanted to provide Man and Shih a way to send her money.  A.R. 89.  Based on these inconsistencies,

1  the ALJ concluded that the statements regarding account ownership and the reason for the

2  joint account were not credible—they "did not ring true."  There are also other

3  inconsistencies in the record.  For example, if the reasons for opening the account were for

4  Miu's benefit, whether it be estate distribution or for her travel, it is unclear why Miu's

5  name was never on the account.  Further, if the account always belonged to Miu, it is odd

6  that after the removal of Shih's name from the account, the account solely belonged to Man.

7  While concise, the ALJ provided a specific and germane reason for disregarding these

8  statements.

9       Shih further asserts that while the purported reasons for opening the account differ,

10  they are not mutually exclusive, and "Miu Ling Lam certainly could have had multiple

11  motivations for opening the account."  Dkt. No. 16 at 8.  However, where the evidence is

12  susceptible to more than one rational interpretation, precedent dictates that the ALJ's

13  determination must be upheld.  *See Ryan*, 528 F.3d at 1198.  The fact that there could be

14  multiple explanations for the existence of the account is not a proper ground for this Court

15  to reverse the ALJ's finding that Man's and Miu's statements were not credible.

16       Finally, Shih argues that the fact there were differing reasons for the existence of the

17  account is unimportant because "both stated that it was Miu Ling Lam who opened the joint

18  account, not claimant."  Dkt. No. 16 at 8.  This argument ignores the ALJ's finding that the

19  statements regarding who opened the account and why were not credible.  Moreover, the

20  pertinent inquiry here focuses on the ownership of the account, not who opened it.  Even if

21  Miu opened the account, that account was still in Shih's former name, and thus Shih was

22  presumptively the owner of the account with a legal right to access the funds unless she

23  rebutted that presumption.  For the foregoing reasons, the Court holds that the ALJ's

24  finding that Shih failed to rebut the presumption of account ownership is supported by

25  substantial evidence.

26  //

27

28

1

**D.    Remand For Evaluation of New Evidence Is Not Warranted.**

2

    Under 42 U.S.C. § 405(g), in determining whether to remand a case in light of new

3

evidence, the Court examines both whether the new evidence is material to a determination

4

and whether a claimant has shown good cause for having failed to present the new evidence

5

to the ALJ earlier. *Mayes v. Massanari*, 276 F.3d 453, 461-62 (9th Cir. 2001).  To be

6

material under section 405(g), the new evidence must bear "directly and substantially on the

7

matter in dispute." *Id*. at 462 (citation omitted).  There needs to be a "reasonable

8

possibility" that the new evidence would have changed the outcome of the administrative

9

hearing. *Id.*  To demonstrate good cause, the claimant must show that the evidence was

10

unavailable earlier. *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) ("If new

11

information surfaces after the Secretary's final decision and the claimant could not have

12

obtained that evidence at the time of the administrative proceeding, the good cause

13

requirement is satisfied.").  *See, e.g., Booz v. Sec'y of Health & Human Services*, 734 F.2d

14

1378, 1380 (9th Cir. 1984) (finding good cause where the claimant could not afford medical

15

examinations, and thus was unable to obtain evidence).

16

    Shih's new evidence includes (1) a letter from Danny Chin, a customer service

17

manager for GBC International Bank, stating that the signature Shih submitted on her

18

request form for bank records is "inconsistent with the signature [GBC International Bank]

19

has on file," (2) a notarized authorization form for release of information from Shih with a

20

signature of her full name, and (3) four withdrawal slips from GBC International Bank with

21

the signature of "M. Lam," dated June 25, 2009, January 8, 2010, and two slips dated

22

February 3, 2010. *See* Dkt. No. 16-1.

23

    First, Shih has failed to show good cause for not presenting this evidence earlier.

24

Shih does not contend that the evidence was unavailable.  Instead, she states "the bank only

25

recently agreed to turn over these documents to Ms. Shih's new counsel." Dkt. No. 16 at 9.

26

The bank records were requested by Doris Ng, who became counsel of record for Shih "just

27

before she filed the instant federal action." Dkt. No. 18-1 at 1.  Shih has not presented

28

1 | sufficient facts for the Court to determine that there is good cause for the delay in obtaining
2 | this evidence.  Unlike *Booz*, it is unclear why Shih could not have obtained the evidence
3 | earlier, and Shih does not demonstrate that the evidence was unavailable during her hearing
4 | before the ALJ or when she requested reconsideration before the Appeals Board.  As such,
5 | without good cause, this Court cannot remand to the Secretary for evaluation of new
6 | evidence.

7 |       With regards to materiality, Shih does not demonstrate that there is reasonable
8 | possibility the new evidence would have changed the outcome of the administrative
9 | hearing.  According to the reply and supporting declaration by Shih's counsel, Shih will
10 | testify that the signature on the withdrawal slips is not hers.  Dkt. Nos. 18 at 6; 18-1 at 2.
11 | Shih speculates that "it will show that the signature provided to the Bank does not belong"
12 | to her, which will greatly substantiate her claim that she did not open, reactivate, or access
13 | the account.  Dkt. No. 16 at 6.  It is unclear, however, how this evidence helps Shih rebut
14 | the presumption of ownership, as it only calls for more speculation.  The evidence does not
15 | appear to contain the signature that GBC International Bank has on file.  Further, Shih does
16 | not offer any explanation as to who signed the withdrawal slips and it is unclear as to
17 | whether the signature on the slips actually belongs to Shih or Man Chung Lam.  Because
18 | most of the slips are signed M. Lam, it could refer to either Mei Lam or Man Lam.  This is
19 | especially confusing because Man Chung Lam's name appears on top of the slips more
20 | often than Shih's former name.  If the signature belongs to her brother, the withdrawal slip
21 | dated June 25, 2009, which predates the SSA's notice to Shih about the account, would be
22 | arguably inconsistent with his statement that he did not know about the account.  In any
23 | event, this evidence only produces more speculation with regards to the issue of ownership
24 | of the account.  As such, remand for evaluation of new evidence is not warranted.
25 | //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### IV. CONCLUSION

This Court GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for summary judgment.  The ALJ's findings are supported by substantial evidence.  This Court DENIES remand because plaintiff has not demonstrated good cause.

IT IS SO ORDERED.

Date: April 23, 2013

_____
Nathanael M. Cousins
United States Magistrate Judge

Case No. 12-cv-3850 NC
ORDER TO GRANT DEFENDANT'S
MSJ AND DENY PLAINTIFF'S MSJ

13